THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00181

MACY KATE BOUTIQUE, INC., a Colorado corporation,

     Plaintiff

v.

FASHION ANGEL WARRIOR, LLC, a New Jersey limited liability company; SPOILED ROTTEN U.S.A., INC., a New York corporation.

     Defendants

---

## COMPLAINT AND JURY DEMAND

---

     Plaintiff Macy Kate Boutique, Inc., by and through its counsel at Montgomery Little & Soran, P.C., hereby submits this Complaint and Jury Demand by alleging as follows (this "Complaint"):

## I.     PARTIES

     1.     Plaintiff Macy Kate Boutique, Inc. f/k/a Macy Kate Boutique, LLC ("Plaintiff") is a Colorado corporation with a principal place of business located at 2 Oakwood Park Plaza, Suite 100 Castle Rock, Colorado 80104.

     2.     Plaintiff is in the business of, among other things, designing and selling children's clothing.

     3.     Ms. Rachael Stone ("Ms. Stone") is the manager and duly authorized representative of the Plaintiff.

4.     Defendant Fashion Angel Warrior, LLC ("FAW") is a New Jersey limited liability company with a principal place of business located at 50 Reservoir Ave., Unit 501, Jersey City, New Jersey 07307.

5.     Defendant FAW is a fashion and marketing consulting agency that, among other things, advertises working with start-up designers to purportedly help their respective business become profitable.

6.     Ms. Christine Daal ("Ms. Daal") is the President of FAW.

7.     Defendant Spoiled Rotten U.S.A., Inc. ("Spoiled Rotten") is a New York corporation with a principal office address of 13-2 Hunter Lane, Ossining, New York, United States, 10562.

8.     Upon information and belief, Mr. Eric Beroff ("Mr. Beroff") is the principal shareholder of Spoiled Rotten.

9.     FAW and Spoiled Rotten are sometimes collectively referred to herein as "Defendants."

## II.     JURISDICTION AND VENUE

10.     Plaintiff incorporates by reference as though fully set forth herein all of the allegations contained in the paragraphs above.

11.     The transactions, acts, representations, and omissions that serve as the basis for this action as alleged in this Complaint took place in substantial part in Colorado.

12.     This Court has personal jurisdiction over Defendant FAW because: (i) FAW purposefully solicited and dealt with Plaintiff, which is a Colorado limited liability Company; (ii) FAW entered into a contract with Plaintiff that resides in Colorado, in which some or all services

thereunder were to be performed in the state of Colorado or benefit a Colorado company, (iii) FAW conducted work for Plaintiff with the specific intent to produce and transport children's clothing to Colorado, and (iv) FAW has sufficient minimum contacts with the State of Colorado such that the exercise of personal jurisdiction over FAW is fair and reasonable.

13.     This Court has personal jurisdiction over Defendant Spoiled Rotten because: (i) Spoiled Rotten conducted work for FAW with the specific intent to produce and transport children's clothes to Colorado, (ii) Spoiled Rotten had knowledge that its contract with FAW was for the benefit of a Colorado company; (iii) Spoiled Rotten manufactured and designed the children's clothing to meet the specification of the Colorado market as set forth by Plaintiff and FAW; and (iv) Spoiled Rotten has sufficient minimum contacts with the State of Colorado such that the exercise of personal jurisdiction over Spoiled Rotten is fair and reasonable.

14.     This Court has Diversity Jurisdiction over the matter brought forth by this Complaint under 28 U.S.C. § 1332(a).

15.     Plaintiff is organized and has its principal place of business in Colorado, and its owner, Ms. Stone, is a Colorado resident.

16.     Defendant FAW is organized and has its principal place of business in New Jersey, and upon information and belief, Ms. Daal is a New Jersey resident domiciled in New Jersey.

17.     Defendant Spoiled Rotten is a New York corporation with its principal place of business in New York, and upon information and belief, Mr. Beroff is a New York resident domiciled in New York.

18.     The amount in controversy exceeds USD $172,000.00.

### III.    GENERAL ALLEGATIONS

19.    Plaintiff incorporates by reference as though fully set forth herein all of the allegations contained in the paragraphs above.

20.    On or about August 10, 2020, Plaintiff and FAW entered into a project management and retainer contract, a true copy of which is attached hereto as **Exhibit 1** (the "PM Contract").

21.    Ms. Daal willingly executed the PM Contract.

22.    The PM Contract provides that, among other things, FAW would source, order, and attend to quality control of the manufacturing of children's clothing using fabrics and patterns chosen by Plaintiff.

23.    Under the PM Contract, upon submission by Plaintiff of Plaintiff's own designs, patterns and fabric material to FAW, FAW was to digitize the patterns, finalize the children clothing design, and contract with and oversee production of the children's clothing by a manufacturer.

24.    In connection with the PM Contract, FAW subcontracted with Spoiled Rotten to manufacture the children's clothing for the benefit of Plaintiff ("Manufacturing Contract").

25.    Plaintiff, accordingly, is a third-party beneficiary under the Manufacturing Contract.

26.    In connection with the PM Contract and the Manufacturing Contract, Plaintiff sent at least $31,386.41 worth of fabric that Plaintiff purchased to the Defendants for manufacturing ("Fabric Costs").

27.     Under the PM Contract, Plaintiff was required to make a monthly payment to
FAW for FAW's work.

28.     In total, Plaintiff has paid FAW approximately $37,335.00 in monthly payments
under the PM Contract ("Retainer Payment").

29.     Under the PM Contract, Plaintiff also agreed to pay production costs related to the
manufacturing of the children's clothing.

30.     At all times relevant to this Complaint, Traci Kaye was an employee of FAW.

31.     Traci Kaye's duties included, among other things, being the production manager
and overseeing the quality of the children's clothing being manufactured for Plaintiff.

32.     As a purported requirement for the manufacturing process, FAW and Traci Kaye
required Plaintiff to pay $8,849.75 to digitize Plaintiff's clothing patterns, labels, and logo
("Digitization Costs").

33.     In and around January 2021, Plaintiff was invoiced by Spoiled Rotten and paid
approximately $41,386.00 plus shipping ("Production Payment 1") to manufacture and ship
children's clothing ("First Shipment").

34.     Traci Kaye, on behalf of FAW, was required by the PM contract to observe and
inspect samples of children's clothing within the First Shipment to confirm quality control for
the product.

35.     The samples from the First Shipment were given by Spoiled Rotten to FAW for
inspection.

36.     During the manufacturing process, FAW represented that it was the point person
for all communication with Spoiled Rotten.

37.     Mr. Beroff, on behalf of Spoiled Rotten, was occasionally looped in on emails with FAW and Plaintiff regarding questions for the production of the clothing, but FAW generally directed that all inquiries or contact during the manufacturing process go through FAW.

38.     To that end, and pursuant to the PM Contract and the Manufacturing Contract, Plaintiff was entirely dependent on the work of FAW and Spoiled Rotten to ensure quality control of the product.

39.     The First Shipment was sent to the Plaintiff directly by Spoiled Rotten at the end of January 2021 in order for Plaintiff to fulfill online orders before Valentine's Day in 2021.

40.     The First Shipment arrived in Colorado at the store of the Plaintiff some time between January 20, 2021 and January 31, 2021.

41.     When Plaintiff received the First Shipment, the children's clothing were packaged and ready for shipping to customers.

42.     As Plaintiff was paying FAW to handle quality control, Plaintiff did not inspect the First Shipment for quality control and trusted the clothing was manufactured correctly.

43.     It was the intent of the Plaintiff that upon receipt of the First Shipment, the clothing and orders making up the First Shipment would immediately be sent to customers to fulfill outstanding orders with Plaintiff.

44.     Accordingly, the First Shipment was shipped to Plaintiff's customers in early February 2021.

45.    On or shortly after February 14, 2021, customers of the Plaintiff started contacting the Plaintiff and complaining to the Plaintiff about quality issues related to clothing the customers had purchased and which were manufactured as part of the First Shipment.

46.    The quality issues related to the First Shipment included that incorrect or inaccurate sizing for all of the children's clothing.  For example, clothing tagged as being the size "3T" was actually size "2T".

47.    Additional quality issues present in the children's clothing from the First Shipment included improper sewing and fraying due to poor craftmanship and/or incorrect or improper implementation of the designs finalized by the Defendants.

48.    Once the quality control issues were known to the Plaintiff, on or after February 14, 2021, Plaintiff began refunding money to her unhappy customers for children's clothing which came from the First Shipment ("Refund Costs").

49.    Unfortunately, Plaintiff could not resell most, if not all, of the returned clothing because the sizes of the children's clothing were not standard sizes or inaccurate in the sizing, and the clothing also had significant quality issues such as fraying and the sewing not being conducted properly.

50.    As of today's date, most of the items received in the First Shipment are still in storage at the cost and expense of the Plaintiff.

51.    In addition to monetary damages suffered by Plaintiff for refunds processed to customers and being unable to resell the First Shipment, Plaintiff also suffered damage to her business reputation with her customers because of the quality issues present in the First Shipment.

52.     Following February 14, 2021, Plaintiff contacted FAW about the quality issues.

53.     In response, FAW initially took the position that there were problems with the fabric but eventually FAW admitted that the First Shipment suffered from quality control issues.

54.     FAW and Spoiled Rotten assured the Plaintiff that FAW and Spoiled Rotten would resolve the quality issues and that the parties should proceed with a second shipment of children's clothing ("Second Shipment").

55.     Plaintiff relied upon the representations of FAW and Spoiled Rotten when placing an order for the Second Shipment.

56.     In and around mid-May 2021, Plaintiff was invoiced by Spoiled Rotten and paid approximately $52,098.00 plus shipping to manufacture and ship the Second Shipment ("Production Payment 2").

57.     Pursuant to the PM Contract, Traci Kaye, on behalf of FAW, was required to observe and inspect samples of children's clothing within the Second Shipment to confirm quality control for the product.

58.     The samples from the Second Shipment were given to FAW by Spoiled Rotten for inspection.

59.     During the manufacturing process for the Second Shipment, once again, FAW acted as the point person and manager of the process, although occasionally Mr. Beroff on behalf of Spoiled Rotten was included in emails during the process.

60.     Again, and pursuant to the PM Contract and the Manufacturing Contract, Plaintiff was entirely dependent on the work of FAW and Spoiled Rotten to ensure quality control of the products in the Second Shipment.

61.     The Second Shipment was sent to the store of the Plaintiff by Spoiled Rotten in June 2021.

62.     Plaintiff carefully compared the Second Shipment against true and correct patterns to determine whether there were any quality issues.

63.     Plaintiff noticed the same quality issues with the Second Shipment immediately, including incorrect or inaccurate sizing of the children's clothing, fraying, and sewing issues.

64.     For some of the clothing in the Second Shipment, Plaintiff paid time and labor to manually switch out sizing labels to correct the sizing of some clothing which could be resold ("Mitigation Costs").

65.     Those items of clothing which could be resized by Plaintiff were put up for sale, but very little of those clothes actually sold because of the sizing issue.

66.     Once again, and for the same reasons as set forth above, Plaintiff was unable to sell or ship the majority of the Second Shipment to any customers because of quality issues.

67.     Alongside the First Shipment, about eighty-five percent (85%) of the Second Shipment remains in storage at the expense of the Plaintiff ("Storage Costs").

68.     Plaintiff again brought the concerns regarding quality issues in the First Shipment and Second Shipment to both Defendants in and around July 2021.

69.     Defendants assured the Plaintiff that the quality issues would be taken care of for future shipments of children clothing.

70.     Defendants requested that Plaintiff order a third shipment of children's clothing.

71.     Plaintiff refused to make a third order because of all the prior quality control issues present in the First Shipment and the Second Shipment.

72.     Pursuant to the PM Contract, FAW's job was to find a capable manufacturer and attend to quality control of the product to be ordered by Plaintiff.

73.     FAW failed did not employ a capable manufacturer, nor did it attend to quality control of the First Shipment and Second Shipment.

74.     Plaintiff entered into the PM Contract with the intent that FAW would deliver usable children's clothes for sale in Colorado.

75.     Pursuant to the PM Contract, Plaintiff has, on multiple occasions, attempted to mediate with FAW.

76.     FAW has refused to schedule this dispute for mediation despite repeated demand.

77.     Plaintiff has suffered economic damages as a result of the payment of the Retainer Payment to FAW.

78.     Plaintiff has suffered economic damages as a result of incurring the Fabric Costs and the Digitization Costs in reliance upon the PM Contract and the Manufacturing Contract.

79.     Plaintiff has suffered economic damages as a result of the payment of the Production Payment 1 and the Production Payment 2 to FAW and Spoiled Rotten.

80.     Plaintiff has suffered economic damages resulting from the Refund Costs of payments returned to affected customers who received items from the First Shipment.

81.     Plaintiff has suffered economic damages resulting from the Mitigation Costs incurred to attempt to fix the quality issues with the Second Shipment so that at least some of the Second Shipment could be resold.

82.     Plaintiff has suffered economic damages resulting from the Storage Costs incurred while storing unusual clothing from the First Shipment and Second Shipment.

83.    Plaintiff has suffered reputational loss due to losing customers over the quality control issues present in the first Shipment.

## IV.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Breach of Contract Against Defendant FAW**

84.    Plaintiff incorporates by reference as though fully set forth herein all of the allegations contained in the paragraphs above.

85.    Plaintiff and FAW knowingly and intentionally entered into the PM Contract.

86.    The PM Contract is a valid, binding, and enforceable contract between Plaintiff and FAW.

87.    Plaintiff has fulfilled its obligations under the PM Contract and has paid all amounts due thereunder, including the payment of the Retainer Payment, the Production Payment 1, and the Production Payment 2, as well as by incurring the Fabric Costs and Digitization Costs.

88.    Plaintiff fulfilled its obligation to mediate under the PM Contract by attempting to demand and arrange mediation with FAW.

89.    Plaintiff fulfilled its obligation to mitigate its damages because the product contained in the First Shipment was not resalable, because Plaintiff incurred the Mitigation Costs in an attempt to correct issues in the Second Shipment, because the majority of the product in the Second Shipment was not resalable, and because Plaintiff forwent a third purchase with FAW.

90.    Plaintiff has worked at all times in good faith with FAW to fulfill its obligations under the PM Contract.

91.     Defendant FAW breached its obligations under the Contract by failing, among other things, to conduct quality control over the items in the First Shipment and Second Shipment.

92.     Defendant FAW breached its obligations by failing, among other things, to deliver the product contemplated by the PM Contract free of defects.

93.     Defendant FAW breached its obligations under the PM Contract by failing, among other things, to attend mediation pursuant to Section 9 of the PM Contract.

94.     Plaintiff has suffered damages as a result of Defendant FAW's breaches of the PM Contract in an amount to be proven at trial.

95.     Defendant FAW's breach of the PM Contract is the actual and proximate cause of damages to the Plaintiff.

96.     Plaintiff is entitled to recover monetary relief in an amount to be proven at trial.


**<u>SECOND CLAIM FOR RELIEF</u>**
**Breach of Contract (Third Party Beneficiary) Against Defendant Spoiled Rotten**

97.     Plaintiff incorporates by reference as though fully set forth herein all of the allegations contained in the paragraphs above.

98.     Defendant FAW entered into the Manufacturing Contract with Defendant Spoiled Rotten to fulfill the obligations of Defendant FAW under the PM Contract.

99.     The Manufacturing Contract is a valid, binding, and enforceable contract.

100.    The Manufacturing Contract is for the sole benefit of Plaintiff in the fulfillment of the PM Contract.

101.    Plaintiff is known to both Defendant FAW and Defendant Spoiled Rotted and is a known beneficiary to the Manufacturing Contract.

102.    Defendant Spoiled Rotten invoiced and received payment from Plaintiff directly for work to be done under the Manufacturing Contract.

103.    Plaintiff is therefore a third-party beneficiary under the Manufacturing Contract.

104.    Plaintiff fulfilled its obligations under the PM Contract and the Manufacturing Contract; namely, Plaintiff has paid all amounts due and owing under the Manufacturing Contract including but not limited to the Production Payment 1 and the Production Payment 2.

105.    Plaintiff fulfilled its obligations under the PM Contract and the Manufacturing Contract by paying for the Fabric Costs and Digitization Costs as purported requirements to get the product manufactured pursuant to both contracts.

106.    Defendant Spoiled Rotten manufactured the items in the First Shipment and the Second Shipment in accordance with the Manufacturing Contract and the PM Contract, for the sole benefit of the Plaintiff.

107.    Defendant Spoiled Rotten breached its obligations under the Manufacturing Contract by failing, among other things, to deliver product in the First Shipment and Second Shipment which were free of defects and quality control issues.

108.    Plaintiff has suffered damages as a result of Defendant Spoiled Rotten's breaches of the Manufacturing Contract in an amount to be proven at trial.

109.    Defendant Spoiled Rotten's breach of the Manufacturing Contract is the actual and proximate cause of damages to the Plaintiff.

110.    Plaintiff is entitled to recover monetary relief in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### Unjust Enrichment Claim Against Defendant Spoiled Rotten

111.    Plaintiff incorporates by reference as though fully set forth herein all of the allegations contained in the paragraphs above.

112.    Plaintiff conferred a benefit upon and enriched Defendant Spoiled Rotten at Plaintiff's expense by paying Spoiled Rotten sums including but not limited to the Production Payment 1 and the Production Payment 2.

113.    Defendant Spoiled Rotten knew that it had to deliver defect and quality issue-free items to Plaintiff in the First Shipment and Second Shipment as a result of being paid the Production Payment 1 and the Production Payment 2.

114.    Defendant Spoiled Rotten voluntarily accepted and retained the benefit of the Production Payment 1 and the Production Payment 2 paid to it.

115.    Under the circumstances, it would be unjust for the Spoiled Rotten to retain the benefit of the Production Payment 1 and the Production Payment 2 without delivering the promised product in the First Shipment and the Second Shipment.

116.    Plaintiff has incurred additional costs as a result of Spoiled Rotten's unjust enrichment.

117.    Plaintiff is entitled to restitution of the sum of the value of the Production Payment 1, the Production Payment 2, and other payments made or costs incurred in amounts to be proven at trial.

## V.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Macy Kate Boutique, Inc. respectfully requests that this Court:

(1) enter judgment in favor of Plaintiff and against Defendant Fashion Angel Warrior, LLC as to

Plaintiff's first claim for relief; and (2) enter judgment in favor of Plaintiff and against Defendant

Spoiled Rotten U.S.A., Inc. as to Plaintiff's second and third claims for relief. Plaintiff also prays

for the following relief against Defendant Fashion Angel Warrior, LLC and Defendant Spoiled

Rotten U.S.A., Inc.:

   a)      For judgment against Fashion Angel Warrior, LLC in an amount to fairly

compensate Plaintiff for its past and present economic losses, including any and all applicable

interest, fees, and costs;

   b)      For judgment against Spoiled Rotten U.S.A., Inc. in amount to fairly compensate

Plaintiff for its past and present economic losses, including any and all applicable interest, fees,

and costs;

   c)      For judgment against Fashion Angel Warrior, LLC in an amount to fairly

compensate Plaintiff for its attorneys' fees, expenses, court costs, and expert witness fees

incurred in the prosecution of its claims;

   d)      For judgment against Spoiled Rotten U.S.A., Inc. in an amount to fairly

compensate Plaintiff for its attorneys' fees, expenses, court costs, and expert witness fees

incurred in the prosecution of its claims;

   e)      For judgment against Fashion Angel Warrior, LLC as to all applicable interest

including without limitation pre-judgment and post-judgment interest;

f)    For judgment against Spoiled Rotten U.S.A., Inc. as to all applicable interest including without limitation pre-judgment and post-judgment interest; and

g)    For judgment against Fashion Angel Warrior, LLC and Spoiled Rotten U.S.A., Inc. as to such other and further relief  as the Court deems just and proper in the premises.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury for all issues so triable.

Dated:  January 20, 2023.              Respectfully submitted,

                                        MONTGOMERY LITTLE & SORAN, PC

                                        s/ *James C. Taravella*
                                        Nathan G. Osborn, #38951
                                        James C. Taravella, #55179
                                        Trey Eckloff, #48677
                                        5445 DTC Parkway, Suite 800
                                        Greenwood Village, Colorado 80111
                                        Phone Number: (303) 773-8100
                                        Fax Number: (303) 220-0412
                                        E-mail:  nosborn@montgomerylittle.com
                                                 jtaravella@montgomerylittle.com
                                                 teckloff@montgomerylittle.com

                                        *Attorneys for Plaintiff Macy Kate Boutique, Inc.*